[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff appeals from the assessment of damages in the amount of $2,250 paid by the defendant for the taking on September 20, 1988, of certain easements upon portions of its property in the Town of Southington. There is a town landfill lying generally northerly of the subject property which was closed in 1985. The easements were taken for the purpose of establishing a 30 year monitoring system ordered by the Department of Environmental Protection to monitor possible leaching from the closed landfill.
On April 19, 1993, the defendant prepared an amended statement of compensation and corrected certificate of taking in order to describe the taking more clearly than had been done in the original certificate of taking. The easements are described in the corrected certificate of taking. (Exhibit A). The monitoring wells are shown on a map (Exhibit D) entitled: "MAP SHOWING MONITORING WELL LOCATIONS FOR TOWN OF SOUTHINGTON WEST QUEEN STREET SOUTHINGTON, CT. SCALE: 1" = 200' JUNE 1, 1992 KRATZERT, JONES ASSOC. INC. CIVIL ENGINEERS — LAND SURVEYORS — SITE PLANNERS, 1755 MERIDEN — WATERBURY TURNPIKE, MILLDALE, CT. TEL 621-3638".
The Town of Southington is in the central part of the state, situated west of the Town of Berlin and south of the Towns of Plainville and Bristol. The subject property is in the northwest corner of the Town of Southington. The property consists of 187.459 acres in a Residence (R-40) zone. It is irregular in shape and topography and it is CT Page 15 partly open and partly wooded. The southerly portion of the former landfill extends partly into the northeasterly portion of the subject property. The property is on the northerly side of Welch Road and has been mined by the plaintiff as a sand and gravel quarry for many years. The mining operation is now confined to the northwesterly portion of the premises, the major part of the premises having been depleted of minerals and restored. At the easterly end of Welch Road on its northerly side there is a development of modestly priced houses. On the southerly side of Welch Road there is a golf course. Lake Compounce lies to the west of the subject property. The property contains wetlands, since the Eight Mile River crosses a portion of it. There is also a deep pond which was created as a part of the gravel mining operation.
The taking consisted of four easements. The first was an easement to conduct a geophysical survey on the subject property, together with the right to enter with vehicles and on foot and to clear brush and trees in an area 15 feet on each side of traverse lines shown on a map and to string wires and lines within the area to make tests. Those rights, by the terms of the easement, were exercised by September 15, 1989, and the operations thereunder completed by December 15, 1989.
The remaining three easements expire on July 11, 2018 or upon completion of the studies of monitoring required by the Connecticut Department of Environmental Protection and/or the Environmental Protection Agency of the United States, whichever is sooner. Upon termination, the Town of Southington is to remove the monitor wells and restore any disturbed area to its preexisting condition. The terms of the easement may be extended by agreement or by further condemnation proceedings.
The second easement is for installation, repair and/or refit and replacement of ten monitor testing wells with their necessary appurtenances as shown and located on the aforesaid map. During initial installation the town had a thirty foot diameter work area around each of the wells which was reduced to a ten foot diameter following installation, together with the right to extract test water samples from the wells. During the term of this easement, the plaintiff, its successors and assigns, may not erect CT Page 16 any buildings, structures or other improvements over the wells without prior written consent of the town. The town agreed to indemnify the plaintiff, its successors and assigns, and save them harmless from all claims arising out of the installation, maintenance and use of the wells, and from entry by and use of the wells by the town or its agents. These wells have all been installed. They are two inch plastic pipes enclosed in four inch steel pipes which extend from two to three feet above ground to varying depths up to about 85 feet below the surface. The wells have concrete bases or collars at ground level.
The third easement is to take water samples from the Eight Mile River flowing through the plaintiff's property at six locations shown and designated on the map, four times each year.
The fourth easement is an easement for ingress and egress over and across the plaintiff's property to and from the monitor test wells and water sampling locations, in motor vehicles and on foot, using the existing and/or relocated roadways and drives and doing no unnecessary damage to the surface of said property. The town is required to restore immediately any damage caused to the surface of the property to its original condition.
There are roadways running through the subject property which lie close to a number of the wells and water sampling locations. There are other wells and water sampling locations which are not close to any existing roadway. The town did not condemn any particular route to these wells and water sampling locations, although presumably it would take the route which is closest and most convenient to and from an existing roadway.
Frank T. Lane testified that he is director of real estate for the plaintiff. He testified that it is the plaintiff's policy to regrade and reclaim land which has been mined and that property to the east of the man-made pond has been regraded. He opined that the property was best suited for residential development in the future. Although there are no subdivision plans at present, it was Lane's opinion that the easements and the obvious presence of the wells, together with the right to cross the property to get to them, have a devastating effect upon future CT Page 17 development. He opined that about 102 acres east of the pond are affected.
Peter R. Marsele, a qualified real estate appraiser, was called as an expert witness by the plaintiff. Marsele opined the highest and best use of the subject property is for residential development with single family houses. It was his opinion that although the subject property consisted of 187 acres, more or less, only 102.2 acres out of the total acreage were influenced by the easements taken. It was his opinion that although the actual areas taken were very small, the right of ingress and egress affected 102.2 acres. This acreage was affected because although under the terms of the easement the town has a right to enter on existing or relocated roadways, not every site has a roadway leading to it and the town may choose any possible route to the scattered sites. He estimated the acreage affected by locating the sites and eliminating the acreage which the town would have no need to cross in order to reach the sites. Marsele also opined that the presence of the easements would reveal that the testing sites are on the premises in order to determine whether there is any contamination in the ground from the closed landfill. He used the market approach to value and estimated value before and after the taking of the 102.2 acres which he believed had been affected. It was his opinion that the 102.2 acres had a value before the taking of $25,000 per acre, or a total of $2,555,000.
Marsele opined that the presence of the landfill itself probably did not affect value, but that the presence of the testing wells together with the right to traverse the property to get to them would reduce the price a developer would pay and hence resulted in a diminution in value. He estimated that the diminution in value due to both factors is 50%, but he was not able to estimate the it diminution due to each separately. It was his opinion that after the taking the 102.2 acres affected had a value of $12,500 per acre, or a total of $1,277,500. He estimated the resulting damages at $1,277,500.
Anthony J. Tranquillo, the Town Engineer, was called by the defendant. Tranquillo testified that the DePaolo Drive landfill had been closed in 1985. He said that the Department of Environmental Protection had ordered CT Page 18 monitoring systems for thirty years in 1988 and that the defendant had hired Goldberg Zoino and Associates (GZ) as consultants. The defendant contracted for the drilling and GZ takes the water samples as the agent of the defendant. It was his opinion that the access easement allows access by whatever is the most convenient path at the time so as not to restrict the plaintiff in developing the property.
Matthew Welinsky, a qualified real estate appraiser, was called as an expert witness by the defendant. He estimated the total acreage owned by the plaintiff at 230 acres according to the town assessor's maps. He opined that the portion of the property lying west of DePaolo Drive, south of the landfill area, north of Welch Road and extending to the Eight Mile River area, could be separated for purposes of development. He allocated this portion which could be developed and which contained 124 acres for appraisal. He opined that the highest and best use for the allocated 124 acres is for development into an average quality residential subdivision. He noted that the neighborhood contains a mix of predominantly residential properties with a scattering of commercial facilities, and that there are numerous industrial facilities not far away. He opined that the property was poorly located for residential development.
Using the sales comparison approach, he opined that the allocated 124 acres had a market value before the taking of $10,000 per acre, or $1,240,000. Because of the changes in the real estate market since the date of taking in 1988, Wilensky opined that a purchaser would have had to hold the property for three years and he discounted the market value to $6,750 per acre, or $837,000. He calculated that the market value per square foot was $0.16. Because he found no sales of land encumbered by comparable easements, Wilensky used the income approach to calculate the market value of the easements. In order to make this calculation, Wilensky estimated the area in square feet encompassed within each easement and estimated the area in square feet required by the access easement. He used $0.16 per square foot to obtain the value of the easements and assumed a yield of 10%. He increased the value for future years and he obtained present value by discounting the yield over the thirty year life of the easements. He concluded that the taking value of the easements was CT Page 19 $10,685. He estimated damages caused by the taking at $10,685.
It is our duty when sitting on an appeal in a condemnation case to make an independent determination of value and fair compensation in light of all the circumstances, the evidence, our general knowledge of the elements affecting value and our viewing of the subject premises. We conclude that the highest and best use of the subject property is for residential development. The actual area taken for the geophysical survey, monitor testing wells and river samples has not been determined. It is not possible to delineate the area encompassed within the access easement. We have concluded that the mere presence of the wells as calling attention to the nearby landfill does not in itself diminish the value of the subject property. Any prudent investor or developer would discover the presence of the landfill if there were no testing wells on the property.
After having seen the property and having given due consideration to the testimony of the experts and other witnesses and all of the evidence, and relying upon our own knowledge of the elements establishing value, we conclude that before the taking the value of the 124 acres of the subject property which could be physically separated and allocated for residential development was $1,860,000, that the after taking value is $1,488,000, and that the damages sustained by the plaintiff are $372,000. Judgment may enter for the plaintiff for the further sum of $369,750 in addition to the sum of $2,250 already paid, with interest on such further sum of $369,750 at the rate of 8% per annum from the date of taking to the date of payment, together with costs and a reasonable appraisal fee of $2,500.
William C. Bieluch State Trial Referee
John D. Brennan State Trial Referee
George Stoughton State Trial Referee CT Page 20